### POTTER et al. v. MALCOLM.

#### (Supreme Court, Appellate Term. June 6, 1907.)

BROKERS—PURCHASE AND SALE OF STOCK—FAILURE TO SELL—LIABILITY—EVIDENCE.

. In an action by a stockbroker for a balance due from a customer, defended on the ground of the failure of the broker to sell stock on it touching margin and pursuant to the customer's directions to sell, evidence *held* insufficient to support a finding that the broker failed to sell the stock, so as to hold him liable for a loss sustained by its subsequent sale at a less price.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Edward C. Potter and another, composing the firm of E. C. Potter & Co., against William H. Malcolm. From a judgment for defendant, plaintiffs appeal. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J. and FITZGERALD, and GOFF, JJ.

Winthrop & Stimson (Albert W. Putnam, of counsel), for appellants.

Arrowsmith & Dunn (W. Arrowsmith, of counsel), for respondent.

GOFF, J. The plaintiffs are stockbrokers, having a branch office at No. 500 Fifth avenue, in charge of their manager, Mr. Schubert. The defendant has an office at No. 5 East Forty-Second street, and during the month of May, 1906, had some stock dealings with plain-

tiffs' Fifth avenue office. This action is brought to recover the balance of defendant's account, which is admitted to be due to plaintiffs; the only question presented on this appeal being plaintiffs' authority to sell 100 shares of Interborough-Metropolitan Stock at 50⅝.

It is contended by defendant that the sale should have been made at 51⅞, a difference of $175, so that plaintiffs would be entitled to recover only the sum of $62.14, instead of the $237.14 demanded. This point is somewhat complicated by the introduction of testimony in regard to a check for $200 given by defendant to plaintiffs on May 17, 1906, which increased defendant's margin on the stock in question from 52⅝ to 50⅝. This check was returned on May 21st, "Payment stopped," and its chief value in this case is in impeaching the testimony of defendant, the sole witness for the defense. Upon a careful examination of all the evidence in the case, this court is of opinion that the judgment cannot stand, even after adopting the most favorable attitude toward defendant's testimony and appearance. It is undisputed that before the market opened on Friday, May 18th, defendant entered plaintiffs' branch office and left an order in regard to the stock in question after seeing that the opening was at 52¼, ⅜ below his margin, if the check for $200 given on the previous day be excluded. Defendant then testified that he at once returned to his office on Forty-Second street and telephoned plaintiffs' main office that he had stopped payment on the $200 check.. According to the agreed statement of facts in this case, the market continued to fall until noon, and then fluctuated between ½ and ⅞. There is a well-established custom that, if a stock touches margin, it is to be sold for the highest it will bring; and, if plaintiffs had been informed that the check had been stopped, and consequently that the stock was below margin, it is difficult to conceive of any reason why plaintiffs, an experienced Wall Street firm should have broken this rule and neglected to sell at once. Defendant's explanation is that Schubert wished to get him out of the difficulty, and so held it over. Even this, however, does not explain why the main office, which did not know defendant, and to whom he claims to have telephoned directly, should have waited until the 21st before selling at 50⅝, at about which time plaintiffs allege that they first learned of the dishonored check. That such an unbusinesslike procedure is alleged by defendant appears from his own testimony:

"When he [Schubert] telephoned back that the main office had telephoned him that the check was stopped, and that I had instructed him to sell the stock, he said he couldn't sell it at 52¼. It was then selling for 52. 'I don't think I could sell it for more than 51⅞.' I said: 'Sell it. I have given you orders to sell it. I am through. I won't carry it another minute. I won't put up another dollar.'"

When it is considered that defendant himself shows that his margin was 52⅝ at the time of that conversation, and assures plaintiffs that they need expect no more money from him, he clearly shows us that every business motive, every thought of self-interest, would compel plaintiffs to sell at once on that falling market without any urging by the defendant. Yet it is uncontradicted that on that same day, and after this conversation, plaintiffs put in orders for defendant at 52¼, and then at 52, not selling the stock until Monday noon, May 21st.

After this evident improbability, it would not be strange if defendant's repeated testimony of his order to "sell it" had been colored slightly upon the trial by what he may have thought while giving the order, thus making it appear that his one order to "sell it" meant at the market, instead of at the figure which the manager, Schubert, had just quoted to him, and which Schubert evidently understood him to intend. This would be allowing defendant a recovery upon what he may have meant, instead of upon what he said.

Defendant's testimony as to these transactions carried very little definite meaning; but in one or two places it stood out more clearly, and these exceptions are worthy of notice. Upon defendant's direct examination his counsel asked:

"Mr. Schubert says that your order was to sell at 52¼. Was that the order on the 18th? A. I told him to sell at 52¼. Q. On the morning of the 18th? A. On the morning of the 18th. That was right at the start, when the stock came out. I said: 'Sell it.' He said: 'Perhaps I cannot sell at 52¼.' He said he might not be able to get 52¼. I said: 'Sell it. I am through with it.' Q. Did you give any price? A. I didn't give any limit at all. I wanted him to sell it. If he couldn't get 52¼, to take 52⅛.

"By Plaintiffs' Counsel: Is that what you said, this last statement, or what you thought?"

It further appears on cross-examination:

"I ask you if you made that statement. Did you say, 'Sell it at 52¼,' or didn't you? A. Yes."

Defendant's attorney explains this upon the theory that defendant's order was for 52¼, or any other quotation plaintiff could get. That is a rather vague method of explaining away positive statements. It in no place appears that any order was given to sell at the market, either directly or indirectly; but, on the contrary, the whole evidence in the case seems to support plaintiffs' contention that the transaction as evidenced by their regular records are as they allege.

There were several other minor issues, diverging from the main point whether the order was to sell at the market or not, but these need not be considered here. The preponderance of credible testimony requires that the judgment of the lower court should be reversed, with costs, and a new trial ordered.

Judgment reversed, and new trial ordered, with costs to appellants to abide the event. All concur.